2002-NMCA-062

47 P.3d 866

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Juan AREVALO, Defendant–Appellee.**

**No. 21,985.**

Court of Appeals of New Mexico.

April 2, 2002.

Certiorari Denied, No. 27,483, May 28, 2002.

Patricia A. Madrid, Attorney General, Arthur W. Pepin, Assistant Attorney General, Santa Fe, NM for Appellant.

Phyllis H. Subin, Chief Public Defender, Nancy M. Hewitt, Assistant Appellate Defender, Santa Fe, NM for Appellee.

## OPINION

SUTIN, Judge.

{1} We address whether a defendant can bar his prosecution under the doctrine of nonmutual collateral estoppel when a co-defendant charged with the same crime was acquitted in a separate trial. The trial court entered a judgment of acquittal, and the State appeals. We determine the doctrine is unavailable to bar the prosecution and reverse.

## BACKGROUND

{2} On June 22, 2000, the district attorney's office filed separate criminal informations against Defendant Juan Arevalo and his co-defendant Yolanda Nava. The informations were identical except for the case number and the defendant's name. Each information charged custodial interference (NMSA 1978, § 30-4-4 (1989)) and contributing to delinquency of a minor (NMSA 1978, § 30-6-3 (1990)). Each information contained an identical list of witnesses upon whose testimony the information was based.

{3} Defendant and Nava received separate jury trial settings. Nava went to trial before Defendant. In the Nava trial, the court granted Nava's motion for a directed verdict on the charge of contributing to the delinquency of a minor. After presentation of all evidence, the jury acquitted Nava of custodial interference.

{4} Before his trial, Defendant filed a motion for judgment of acquittal asserting that because Nava was found not guilty, the doctrine of collateral estoppel prevented the State from proceeding against Defendant. The trial court questioned the prosecution about what facts and issues would be different in Defendant's case. The prosecutor responded that the evidence would be substantially similar, but not identical, and that the theory underlying the contributing charge would be different.

{5} The trial court determined that, although the co-defendants were different, the ultimate facts and issues in Defendant's case were litigated and decided in Nava's case, and the State had a full and fair opportunity to litigate those facts and issues. After hearing argument, researching the issue on its own, listening to the tapes of the Nava trial, and taking judicial notice of the Nava trial, the court granted Defendant's motion and "adjudged" him not guilty. The State appeals the judgment of "not guilty" on the ground the doctrine of collateral estoppel cannot be invoked to dismiss the charges against Defendant.

## DISCUSSION

### The State Has the Right to Appeal

{6} Defendant challenges the State's right to appeal. He contends the trial

court's ruling was a determination on the merits, constituting an acquittal. *See County of Los Alamos v. Tapia,* 109 N.M. 736, 739–40, 790 P.2d 1017, 1020–21 (1990) (distinguishing between an acquittal after a determination of facts and a dismissal terminating the prosecution before any determination of guilt or innocence). Defendant likens the court's action to a grant of a motion for directed verdict. *See State v. Griffin,* 117 N.M. 745, 748–49, 877 P.2d 551, 554–55 (1994) (distinguishing between a verdict of acquittal and granting a motion for a new trial after conviction). Defendant asserts the State's appeal does not come within the limited rights in NMSA 1978, § 39–3–3(B) (1972), which grants the right to appeal from a dismissal of a formal accusation or from an evidentiary ruling. Rather, Defendant argues, any appeal and reversal for a trial would place him in double jeopardy, in violation of Section 39–3–3(C) as well as N.M. Const. art II, § 15. *See Tapia,* 109 N.M. at 741–44, 790 P.2d at 1022–25.

{7} The State counters that the trial court's judgment, however styled or labeled, was in fact a pretrial dismissal, in that Defendant was never placed in jeopardy with evidence of guilt presented. According to the State, the dismissal was not based on insufficient evidence, but rather constituted nothing more than an erroneous ruling that forbade the State from presenting any evidence showing guilt, a ruling made before any jeopardy attached. *See id.* at 739–40, 790 P.2d at 1020–21; *see also State v. Davis,* 1998–NMCA–148, ¶¶ 11–16, 126 N.M. 297, 968 P.2d 808 (holding metropolitan court's pretrial determination that charged crime did not apply to the defendant as a matter of law was not an acquittal since he was not placed in jeopardy when the "motion hearing did not contemplate that the metropolitan court, as trier of fact, hear the evidence on the full merits of the offense"); *State v. Mares,* 92 N.M. 687, 690, 594 P.2d 347, 350 (Ct.App. 1979) (holding double jeopardy did not attach where court ruled before trial that the State could not prove the defendant acted unlawfully as a matter of law and was therefore not guilty); *Kott v. State,* 678 P.2d 386, 390–91 (Alaska 1984) (holding that while State did not have a right to appeal, it could neverthe-

less obtain review through a discretionary review procedure). In the present case, we agree with the State, and we also interpret Section 39–3–3(B)(1) to give the State the right to appeal. *See State v. Santillanes,* 96 N.M. 482, 486, 632 P.2d 359, 363 (Ct.App. 1980), *rev'd in part on other grounds by* 96 N.M. 477, 632 P.2d 354 (1981), *cited in Griffin,* 117 N.M. at 747 n. 1, 877 P.2d at 553 n. 1, for the proposition that "Section 39–3–3 is not a restriction on the right of the [S]tate to appeal a disposition contrary to law."

### The State Has the Right to Prosecute

{8} Collateral estoppel " 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.' " *State v. Tijerina,* 86 N.M. 31, 33, 519 P.2d 127, 129 (1973) (quoting *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970)). "The principle of collateral estoppel is embodied in the Fifth Amendment to the Constitution of the United States guaranty against double jeopardy and is fully applicable to states by force of the Fourteenth Amendment." *State v. Nagel,* 87 N.M. 434, 436, 535 P.2d 641, 643 (Ct.App. 1975).

{9} Traditionally, the elements of collateral estoppel were that (1) the parties in the current action were the same or in privity with the parties in the prior action, (2) the subject matter of the two actions is different, (3) the ultimate fact or issue was actually litigated, and (4) the issue was necessarily determined. *Reeves v. Wimberly,* 107 N.M. 231, 233, 755 P.2d 75, 77 (Ct.App.1988). For purposes of this opinion, we assume that facts necessary to Defendant's guilt were actually litigated and necessarily decided in the prior case and that the two actions are different. It is the first element that concerns us in this case. Defendant was not the party or in privity with the party against whom the first judgment of acquittal was entered. This required element has been referred to as "same parties" or "mutuality." *Edwards v. First Fed. Sav. & Loan Ass'n,* 102 N.M. 396, 401, 696 P.2d 484, 489 (Ct.App.

1985). Defendant concedes lack of mutuality, but contends mutuality is not required.

{10} In civil cases, New Mexico has "eliminated the traditional rule that the parties must be the same or in privity if the doctrine of collateral estoppel is to apply." *Reeves,* 107 N.M. at 234, 755 P.2d at 78. It is sufficient that "[t]he party against whom [collateral estoppel] is invoked must have had a full and fair opportunity to litigate the issue or issues." *Id.* at 234–35, 755 P.2d at 78–79. The issue before us today is whether the mutuality requirement should also be abandoned in criminal cases.

{11} We adhere to the traditional rule requiring a criminal defendant who raises defensive collateral estoppel to have been the same party in the previous action. That is, a defendant who was not placed in jeopardy cannot use the collateral estoppel doctrine to dismiss a case against him.

{12} In *Standefer v. United States,* 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980), the Supreme Court of the United States addressed the question whether the "contemporary doctrine of nonmutual collateral estoppel," unknown at common law until 1942, could be applied to bar the government from relitigating the guilt of the principal in a subsequent trial against an accessory. *Id.* at 14, 21–22, 100 S.Ct. 1999. The Supreme Court rejected the doctrine of nonmutual collateral estoppel in criminal prosecutions because, in criminal trials, the government is "often without the kind of 'full and fair opportunity to litigate'" as is a party in civil trials. *Id.* at 22–23, 100 S.Ct. 1999. The "important federal interest in the enforcement of the criminal law," and "[t]he public interest in the accuracy and justice of criminal results," are not present in civil litigation and outweigh the concern in civil cases for judicial economy. *Id.* at 24–25, 100 S.Ct. 1999. Further, the Supreme Court was "inclined to reject, at least as a general matter, a rule that would spread the effect of an erroneous acquittal to all those who participated in a particular criminal transaction." *Id.* at 25, 100 S.Ct. 1999.

{13} State courts have followed *Standefer* in rejecting the application of nonmutual collateral estoppel in criminal cases. *See, e.g., Kott,* 678 P.2d at 391–93 (involving a defendant claiming collateral estoppel based on acquittal of his co-defendant on the same charges); *People v. Allee,* 740 P.2d 1, 7–9 (Colo.1987) (en banc) (involving a defendant claiming collateral estoppel based on acquittal of his son on identical charges); *People v. Franklin,* 167 Ill.2d 1, 212 Ill.Dec. 153, 656 N.E.2d 750, 755–56 (1995) (involving a defendant who attempted to use the reversal of his co-defendant's conviction to his benefit on appeal); *People v. Paige,* 131 Mich.App. 34, 345 N.W.2d 639, 641 (1983) (involving a defendant whose co-defendant was tried and convicted of a lesser charge).

{14} *Allee* is very similar to the present case. A father and his son were co-defendants charged with assault and resisting arrest. The son was acquitted. The father raised collateral estoppel as a bar to his prosecution. The government did not intend to present different evidence in the father's trial than it presented in the son's trial. *Id.* at 9. Unlike the present case, the trial judge in *Allee* was the same as in the son's trial. *Id.* The Colorado Supreme Court focused on the fact that "the error-correction procedures available to a party in a civil case are not available to nearly as great an extent to the People in a criminal case." *Id.* at 8. The *Allee* court indicated that, without "such remedial procedures in criminal cases, juries may assume the power to acquit out of compassion, compromise or prejudice." *Id.* From this the court concluded that "the premise of collateral estoppel, which is the confidence that the result achieved in the first trial was substantially correct, is lacking to a significant extent with respect to criminal trials." *Id.* Further, in its analysis of the doctrine of collateral estoppel, the *Allee* court determined "the important state interest in enforcement of the criminal law … outweighs the concerns for crowded court dockets and consistency of verdicts." *Id.* at 9. The court did not believe "the prospect for inconsistent verdicts [was] as compelling a reason for a liberal application of the doctrine of collateral estoppel in criminal cases as it is in civil cases." *Id.* at 10. In addition, the court reasoned that "the doctrine of nonmutual collateral estoppel is not needed in

criminal cases to protect a defendant from burdensome and vexatious litigation." *Id.*

{15} Anticipating *Standefer*, a Pennsylvania case held "the scope of the doctrine [of collateral estoppel] in criminal cases is not coextensive with that applied in civil cases." *Commonwealth v. Brown*, 473 Pa. 458, 375 A.2d 331, 334 (1977). "In the context of criminal litigation, . . . the concept of mutuality has retained its vitality." *Id.* "The majority rule remains that a judgment of acquittal of one criminal defendant does not prevent the relitigation of an issue or controversy in the prosecution of another criminal defendant, even though the same transaction is involved." *Id.* at 334–35. The court in *Brown* looked to state policy "in favor of protecting the public interest against compounding the effect of an erroneous or irrational acquittal," pointing to the policy stated in its criminal code permitting prosecution of an accomplice even though the principal had been acquitted. *Id.* at 335.

{16} *People v. Palmer*, 24 Cal.4th 856, 103 Cal.Rptr.2d 13, 15 P.3d 234 (2001), involved two alleged co-conspirators who were tried jointly on the same evidence by two juries. Inconsistent verdicts resulted. The Supreme Court of California considered whether the inconsistent verdicts could each be affirmed on appeal. *Id.* at 235–37. After reviewing *Standefer* and other United States Supreme Court decisions and several lower federal court cases, the court in *Palmer* affirmed both verdicts. *Id.* at 238–41. "[O]ccasional inconsistent verdicts", in the court's view, "do not undermine the integrity of our criminal justice system but are an inevitable consequence of that system." *Id.* at 240. "[A] rule that could promote the duplication of an erroneous acquittal to all persons who participate in a criminal transaction might itself undermine the system more than accepting inconsistent verdicts once they have occurred." *Id.* at 240–41 (internal quotation marks and citation omitted).

{17} In discussing the United States Supreme Court's "tolerance of inconsistent verdicts," one commentator has noted the "overwhelming unanimity of the Court's members on the question" in the five decisions in which "the Court has addressed the problem of inconsistent jury verdicts in criminal cases." Eric L. Muller, *The Hobgoblin of Little Minds? Our Foolish Law of Inconsistent Verdicts*, 111 Harv. L.Rev. 771, 776 n. 19 (Jan.1998). As stated by the Supreme Court after discussing its four preceding cases involving inconsistent verdicts, "[t]hese decisions indicate that this is not a case where a once-established principle has gradually been eroded by subsequent opinions of this Court." *United States v. Powell* 469 U.S. 57, 63, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984).

{18} Defendant does not attempt to debunk the reasoning of the United States Supreme Court. In fact, Defendant only distinguishes *Standefer* by pointing out that the defendant there was charged as an accessory, while Defendant in this case was charged as a principal. Defendant fails in his answer brief to cite a single case that has held that a co-defendant in Defendant's circumstances cannot, based on the doctrine of nonmutual collateral estoppel, be charged and convicted where his co-defendant has been acquitted.

{19} *Standefer* and its wide and continued following have required mutuality as a necessary element of the collateral estoppel doctrine and have foreclosed the double jeopardy defense when mutuality is lacking. Further, *Standefer* and *Palmer* have declined to forsake this policy in the face of concerns that inconsistent judgments are unfair and illogical.

{20} The rule rejecting nonmutual collateral estoppel in criminal cases is not a rote restatement of an outdated decision. The logic and underlying reasoning of the leading cases persuade us to reject nonmutual collateral estoppel in this case. In civil cases, the losing party can appeal an erroneous jury verdict. In criminal cases the State cannot appeal an erroneous jury acquittal that results from compromise, mistake, nullification, passion and prejudice, or other irrational reason. *See* § 39–3–3(B). We therefore do not extend nonmutual collateral estoppel found in civil law to criminal proceedings.

{21} In addition, in New Mexico, an accessory can be found guilty notwithstanding the

acquittal of the principal. NMSA 1978, § 30–1–13 (1972). Like *Brown*, this statute seems to express a public policy that conflicts with application of nonmutual collateral estoppel. Further, *Standefer* and *Palmer* viewpoints hold that inconsistency in verdicts is not a due process violation requiring acquittal when a co-defendant is acquitted on the same charges and evidence. Nor do we see any policy of judicial economy driving a decision not to hold a separate trial of a co-defendant.

**CONCLUSION**

{22} We reverse the trial court's judgment adjudging Defendant not guilty and remand for trial.

{23} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and LYNN PICKARD, Judges.