2006-NMCA-132

144 P.3d 145

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Charles GOMEZ, Defendant–Appellee.**

**No. 24,524.**

Court of Appeals of New Mexico.

Sept. 7, 2006.

Patricia A. Madrid, Attorney General, Santa Fe, NM, Steven S. Suttle, Assistant Attorney General, Albuquerque, NM, for Appellant.

John Bigelow, Chief Public Defender, Kathleen T. Baldridge, Assistant Appellate Defender, Santa Fe, NM, for Appellee.

## OPINION

ROBINSON, Judge.

{1} The State contends that, even though the district court directed a verdict and acquitted Defendant of the charge of DWI, it is entitled to appeal the district court's ruling excluding a document relating to Defendant's blood alcohol test results.

{2} We must determine whether the State had a right to appeal the exclusion of the blood alcohol report pursuant to NMSA 1978, § 39-3-3(B)(2) (1972), and whether double jeopardy precludes the State from retrying Defendant after the jury had been impaneled. To ensure a fully informed decision, we requested supplemental briefing by the parties to address whether Defendant is afforded the protection of the double jeopardy clause of the United States Constitution and the New Mexico Constitution. We conclude that, under the facts presented, the State cannot appeal the exclusion of an inadmissible blood alcohol report under Section 39-3-3(B)(2), and double jeopardy precludes the State from trying Defendant again because the State refused to present any evidence to satisfy the elements of the charged offense after the jury was impaneled.

## I. BACKGROUND

{3} The district court's order, directing a verdict and judgment of acquittal, stated:

THIS MATTER came before the [district] court for a[j]ury [t]rial on December 3, 2003 and the State and Defense announced they were ready to proceed and a jury was impaneled.

Prior to impaneling the jury, ... [D]efendant made objection about the late disclosure of a witness on the day prior to trial. The [S]tate had amended its witness disclosure to remove the name of the nurse who did the blood draw and substituted therefor a human resources employee from the hospital. After impaneling the jury, the [district] court took up ... [D]efendant's objection. The [district] court did so to resolve the issue of foundation for admission of the blood test results. It appeared to the [district] court necessary to do so prior to opening statements because it would be highly prejudicial to ... [D]efendant if the [S]tate were allowed to make reference to the results in opening statement and subsequently it was determined there was no foundation for admission of the results.

The [district] court heard testimony and arguments of counsel outside the presence of the jury and ruled that the evidence was insufficient to establish a foundation for admission of the results of a blood alcohol test. The [S]tate took exception to the [district] court's ruling and upon the request of the [S]tate, a recess was taken to allow the [S]tate to decide how it wished to proceed in light of the [district] court's evidentiary ruling on the inadmissibility of

the blood alcohol evidence. After this recess, the [S]tate announced its intent to proceed with an immediate appeal pursuant to NMSA Section 39–3–3(B)(2). The [district] court ruled that the evidentiary ruling complained of was not immediately appealable under that statute. The [S]tate was granted a second recess to again determine how it wished to proceed in light of the [district] court's rulings. After the second recess[,] the [S]tate announced its intent to proceed with an immediate appeal and said that it was ready to proceed "on appeal." The [S]tate did not offer any further testimony.

IT IS THEREFORE ORDERED that, after a jury having been impaneled and the [S]tate not presenting any evidence to support a charge of [DWI], the [district] court directs a verdict of not guilty be entered in this matter.

IT IS THEREFORE ADJUDGED AND DECREED that ... [D]efendant is acquitted of the charge of [DWI] and is discharged from any further obligation to the [district] court.

Additional facts relating to these issues are set forth in our analysis.

## II. DISCUSSION

### Standard of Review

█ {4} The State contends on appeal that it has a constitutional and statutory right to appeal the district court's ruling excluding Defendant's blood alcohol report. Specifically, the State argues that, "[b]y excluding a crucial and significant exhibit, the [district] court denied the State its one, fair opportunity to marshal its resources to obtain a conviction on its complaint." This Court reviews de novo whether the district court's decision to exclude evidence was based upon a misapprehension of the law. See State v. Romero, 2000–NMCA–029, ¶ 6, 128 N.M. 806, 999 P.2d 1038.

{5} We must address whether the State has a right to appeal under the facts presented and whether this Court has jurisdiction. Under Section 39–3–3(B)(2), the State is permitted to appeal "a decision or order of a district court suppressing or excluding evidence ... if the district attorney certifies to

the district court that the appeal is not taken for the purpose of delay and that the evidence is a substantial proof of fact material in the proceeding." *Id.* In *Romero,* the State argued that it had statutory authority under Section 39–3–3(B)(2) to appeal the exclusion of evidence that was a critical part of its prosecution. 2000–NMCA–029, 128 N.M. 806, 999 P.2d 1038. This Court held that "[t]he excluded evidence went to the very heart of the proof required to establish an essential element of the State's case." *Id.* ¶ 9. It reasoned that, since "[t]he [district] court's ruling made it impossible for the State to prove an element of its case[,][w]e have jurisdiction to entertain this appeal under Section 39–3–3(B)(2)." *Id.*

{6} In this case, Defendant was charged with DWI, contrary to NMSA 1978, Section 66–8–102 (1999), and for a conviction the State must prove beyond a reasonable doubt, in relevant part, that (1) "[D]efendant operated a motor vehicle;" and (2) "[a]t that time, ... [D]efendant had an alcohol concentration of eight one-hundredths (.08) grams or more in [one hundred milliliters of blood]." UJI 14–4503 NMRA (1997). But the State had another choice of proof that is easier to accomplish than the former. For instance, the State can prove beyond a reasonable doubt that, at the time Defendant operated the motor vehicle, he "was under the influence of intoxicating liquor, that is, as a result of drinking liquor ... [D]efendant was less able to the slightest degree, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to the person and the public." UJI 14–4501 NMRA (1997).

{7} Here, the State, pursuant to Section 39–3–3(B)(2), certified in its notice of appeal that the appeal was not taken for the purpose of delay, and the evidence is a substantial proof of a fact in the proceedings. However, without elaborating, the district court ruled that the evidentiary ruling complained of was not appealable under Section 39–3–3(B)(2). Contrary to *Romero,* exclusion of the inadmissible blood alcohol report here does not go to the heart of the charged offense and does not eliminate the "one, fair opportunity ... to obtain a conviction" as the

State contends. For instance, when Officer Tutor discovered Defendant, he appeared to be unconscious, or asleep, in the front seat of his truck with the door wide open at 10:35 a.m. After waking Defendant, Officer Tutor asked Defendant if he had been drinking and Defendant replied that he had "a little." Officer Tutor detected a strong odor of alcohol on or about Defendant, and noticed that he had difficulty standing and that his speech was slurred. Lastly, Defendant failed numerous field sobriety tests and was then placed under arrest. The State refused to present any of the aforementioned evidence to prove the essential element that Defendant was less able to the slightest degree, either mentally or physically or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to the person and the public. *See* UJI 14–4501. The district court's ruling to exclude the blood alcohol report did not make it impossible for the State to prove the elements of its case. Therefore, we agree with the district court that the exclusion of an inadmissible blood alcohol report is not appealable under Section 39–3–3(B)(2) and that the blood alcohol report was not a substantial proof of a fact that eliminated the State's only opportunity to obtain a conviction. Introduction of the blood alcohol report would have provided evidence of aggravated DWI, but is unnecessary for a charge of simple DWI, and that is what Defendant was charged with. Although the blood alcohol report may have been a substantial proof of material fact to the charged offense of aggravated DWI, the exclusion of it did not prevent the State from proceeding because it had ample evidence to meet its burden to prove Defendant's DWI charge, and it was the State that refused to present that evidence. Thus, unlike *Romero,* the excluded evidence here did not go to the heart of the proof required to establish DWI. Therefore, this Court will not disturb the district court's exclusion of the blood alcohol report. Consequently, jurisdiction remained in the district court and nothing prevented the district court from proceeding with the case, except the State's adamant refusal to continue with the trial and prosecute its case.

**Double Jeopardy**

{8} The State recognized that the question of double jeopardy may be raised at any time. NMSA 1978, § 30–1–10 (1963). The State is forbidden to appeal when jeopardy would bar a retrial. § 39–3–3(C). However, the State asks this Court to expand the holding in *State v. Arevalo,* 2002–NMCA–062, ¶ 7, 132 N.M. 306, 47 P.3d 866, where this Court treated a directed verdict before any evidence had been heard by an unsworn jury as a pretrial dismissal to permit appeals such as this. The State also suggests that the district court's ruling was erroneous and that it should be permitted to challenge such decisions on appeal where neither the court, nor the jury, has heard any evidence.

{9} This Court reviews double jeopardy claims de novo. *State v. Fielder,* 2005–NMCA–108, ¶ 10, 138 N.M. 244, 118 P.3d 752. The double jeopardy clause of the United States Constitution and the New Mexico Constitution guarantees that no person shall be put in jeopardy twice for the same offense. *See* U.S. Const. Amend. V; N.M. Const. art. II, § 15. "Jeopardy begins or attaches when the trier of fact is empowered to decide guilt or innocence and jeopardy terminates upon an acquittal...." *State v. Vaughn,* 2005–NMCA–076, ¶ 8, 137 N.M. 674, 114 P.3d 354; *State v. Angel,* 2002–NMSC–025, ¶ 8, 132 N.M. 501, 51 P.3d 1155 (stating that, in a criminal trial, jeopardy attaches at the moment the trial of fact is empowered).

{10} In this case, the jury was sworn and impaneled to determine Defendant's innocence or guilt. At this time, the State notified the court that it had been unable to obtain service of process on Ginger Stubbs, a nurse, who would testify that Defendant's blood was drawn in accordance with the Scientific Laboratory Division (SLD) regulations. The State amended its witness list the previous day to include a human resources employee to verify Ginger Stubbs' employment. Defendant objected to this witness being called and to the admission of the blood alcohol content report because the State did not have a witness who could testify that proper SLD procedures were followed for the blood draw. Since the jury

was impaneled, the State proffered a substitute witness, Officer Jason Tutor, to establish whether or not the officer could testify that the blood was drawn pursuant to SLD regulations. This was not a pretrial motion and clearly the trial had commenced. Therefore, jeopardy attached the moment the jury was impaneled.

{11} The State then called Officer Tutor. He testified that he had no independent recollection of the blood draw, but stated that, if he signed the report, he must have witnessed the test. On cross-examination, Officer Tutor testified that he did not recall witnessing the blood draw and did not know if the nurse followed those procedures. The court then excluded the blood test results for failing to lay the proper foundation and recessed the proceedings to allow the prosecution time to reassess its case.

{12} After reconvening, the State announced it would appeal the court's ruling. The district court denied the request. The State requested an additional recess, which the court granted. After reconvening again, the State noted its intention to file an interlocutory appeal. The district court then asked the State to present its evidence and proceed with its case, but the State refused. The district court then entered a directed verdict of acquittal.

{13} This Court has noted that "[t]he United States Supreme Court has said that it is 'the most fundamental rule' that a defendant cannot be re-tried after a verdict of acquittal, even if that verdict is egregiously erroneous." *Vaughn,* 2005–NMCA–076, ¶ 9, 137 N.M. 674, 114 P.3d 354 (quoting *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 571, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977).) In his order, the district court expressly ruled that Defendant was acquitted of the charge of DWI. Thus, based on this ruling, Defendant cannot be retried.

{14} Moreover, "[t]he [United States] Supreme Court has also instructed that what constitutes an acquittal 'is not to be controlled by the form of the judge's action. Rather, we must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged' and the focus is on 'substance as well as form.' " *Id.* (quoting *Martin Linen Supply Co.,* 430 U.S. at 571–72, 97 S.Ct. 1349). As noted, Defendant was charged with DWI, contrary to Section 66–8–102 (1999) and the State's inability to lay the proper foundation for the admissibility of Defendant's blood alcohol content report, pursuant to NMSA 1978, § 66–8–103 (1967), was a failure of proof under UJI 14–4503.

{15} Furthermore, as mentioned earlier, the State had ample evidence to present for the charged offense of DWI, which the State refused to present. When the State refused to proceed with its case, it failed to prove the essential element that Defendant was less able to the slightest degree to handle a vehicle with safety to the person and the public. *See* UJI 14–4501. Therefore, since the State failed to present any factual elements of the charged offense, the district court correctly issued a directed verdict and acquitted Defendant of DWI. "After an acquittal, any type of fact-finding proceeding going to elements of the charged offense violates the federal double jeopardy clause." *Vaughn,* 2005–NMCA–076, ¶ 9, 137 N.M. 674, 114 P.3d 354; § 39–3–3(C) ("No appeal shall be taken by the [S]tate when the double jeopardy clause of the United States constitution or the constitution of the [S]tate of New Mexico prohibits further prosecution.").

{16} Moreover, since the district court's ruling was based on the merits of the evidence, a retrial is precluded. *See Burks v. United States,* 437 U.S. 1, 16, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) (stating that a retrial will not be permissible "when a defendant's conviction has been overturned due to failure of proof at trial, in which case the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble"); *see also State v. Gardner,* 1998–NMCA–160, 126 N.M. 125, 967 P.2d 465. In *Gardner,* this Court discussed the interplay between the DWI statutes and the Implied Consent Act and administrative regulations, stating that "compliance with these regulations would be a condition precedent to admissibility." *Id.* at ¶ 11. If the exclusion of evidence is a result of trial error from which the State could appeal, and

after which if appeal were to be successful, Defendant could be retried. *See County of Los Alamos v. Tapia*, 109 N.M. 736, 790 P.2d 1017 (1990). In *Tapia*, our Supreme Court confronted an issue similar to that presented in this case: Whether the State's appeal is barred when jeopardy has attached, but the trial was aborted by a ruling of the district court before the jury determined the guilt or innocence of the defendant. In that case, the district court ordered a dismissal of the criminal charge when it ruled, during mid-trial, that the defendant's arrest was unlawful and that all evidence in support of the charged must be suppressed. *Id.* at 737, 790 P.2d at 1018. Our Supreme Court held that double jeopardy is not offended when a mid-trial dismissal results from "trial error," as opposed to a factual determination, or lack thereof, of the guilt or innocence of the defendant. *Id.* at 738–41, 790 P.2d at 1019–22.

{17} For blood sample collection, the regulations require that the "[b]lood samples be collected in the presence of the arresting officer or other responsible person who can authenticate the samples. Blood samples shall be collected by veni-puncture as authorized by the New Mexico Implied Consent Act, NMSA 1978, Sections 66–8–105 et. seq." 7.33.2.12 NMAC. Furthermore, "[t]he initial blood samples should be collected within two hours of arrest ... [that] [e]thyl alcohol shall not be used as a skin antiseptic in the course of collecting blood samples ... [and] the samples shall be dispensed or collected using an SLD-approved blood collection kit or directly into two or more sterile tubes containing sufficient sodium fluoride so that the final concentration shall contain not less than 1.0 percent sodium fluoride." *Id.* Here, the blood drawer did not testify. Officer Tutor testified that he did not know what a "veni-puncture" was, or if it was done. He could not testify as to the antiseptic used, or whether the nurse followed SLD regulations correctly. The State presented evidence regarding Defendant's blood draw, which the district court found insufficient to establish a foundation for admission of the results of a blood alcohol test. We conclude that the State failed to establish the foundational requirements as set out above and, as in *Gardner*, "substantial compliance" will not suffice,

and we will not relax the regulation requirements. *Id.* ¶¶ 16–20.

{18} As discussed above, this is not an appealable issue under Section 39–3–3(B)(2), combined with the holding in *Tapia*, that since there is no trial error here, the State is precluded from retrying this case. Lastly, our case is distinguishable from *Arevalo* because here the jury was impaneled when the district court ruled that the State did not lay a proper foundation for the admission of the blood alcohol report while, in *Arevalo*, the district court's dismissal was a pretrial ruling before a jury was impaneled. Therefore, we cannot expand our holding in *Arevalo* to permit appeals such as this.

## III. CONCLUSION

{19} This Court admonishes all involved in this case for not resolving the admissibility of the breath alcohol report pretrial. We note that Defendant raised the suppression of the report before the jury was impaneled and the trial began. Why wasn't the suppression/exclusion of evidence issue resolved before trial began? We would not be on this merry-go-round if the trial court had done so.

{20} The exclusion of the blood alcohol report did not preclude the State's only opportunity to obtain a conviction of DWI because it had ample evidence and a fair opportunity to offer its proofs. Therefore, the State is precluded from appealing the exclusion of the inadmissible blood alcohol report under Section 39–3–3(B)(2). Thus, this Court has no jurisdiction to address this issue. Also, when the State refused to present any evidence to satisfy the elements of the charged offense after the jury was impaneled, double jeopardy precludes the State from trying Defendant again. We, therefore, dismiss the appeal.

{21} **IT IS SO ORDERED.**

MICHAEL D. BUSTAMANTE, Chief Judge, specially concurring.

CYNTHIA A. FRY, Judge, specially concurring.

BUSTAMANTE, Chief Judge (specially concurring).

{22} I concur in the result of Judge Robinson's opinion. I do not agree with the analytical path Judge Robinson's opinion takes. In particular, I do not think it is appropriate to question the district attorney's certification under Section 39-3-3(B)(2) for the first time on appeal. In addition, I believe the opinion's double jeopardy discussion is wrong in two respects. First, it misinterprets the holding of *County of Los Alamos v. Tapia*, 109 N.M. 736, 790 P.2d 1017 (1990), and its concept of "trial error" and, second, it is improper to decide the merits of the evidentiary issue in order to determine that there was no "trial error" under the *Tapia* rubric. Finally, it is illogical to decide the evidentiary issue while at the same time holding that the State does not have the right to appeal the issue. Opinion, ¶¶ 16–17. Were I the original author, I would resolve the case as follows.

{23} The State appeals asserting that it has a right to an immediate appeal under Section 39-3-3(B)(2) from a ruling—issued midtrial—excluding evidence. We reject the State's contention and affirm the district court.

**FACTS AND PROCEEDINGS**

{24} A criminal complaint was filed against Defendant Gomez on May 11, 2001, charging him generically with violating Section 66-8-102(DWI). The facts underlying the complaint are contained in an attached affidavit signed by Officer Jason Tutor. According to the affidavit, Defendant was found "unconscious or asleep" lying across the front seat of his truck with the driver's door open. The engine was off and the keys were not in the ignition. The keys were later found in Defendant's pants pocket. Defendant was in a state of dishevelment, wearing no shirt or shoes, pants unzipped, belt unfastened and smelling of alcohol. When asked for his driver's license, Defendant tried to give the officer a bank card. Defendant could not complete field sobriety tests and was taken to a medical facility to "have blood drawn to determine his blood alcohol concentration and to obtain a clearance for the Chaves County Detention Center."

{25} The case was dismissed in September 2001 because the district court felt the complaint did not establish there was probable cause to believe Defendant was driving while under the influence. This ruling was reversed by the Court of Appeals in an unpublished opinion (*State v. Gomez*, Ct.App. No. 22,577, filed Dec. 27, 2001), and the reversal was affirmed by our Supreme Court, *State v. Gomez*, 2003–NMSC–012, 133 N.M. 763, 70 P.3d 753. The case was mandated back to the district court in early June 2003.

{26} The case was set for jury trial on December 3, 2003. Before seating a jury, the district court held a brief meeting with counsel to deal with certain administrative details generally irrelevant here. The State had filed a motion in limine asking that domestic violence allegations against one of the arresting officers not be brought to light. The judge stated he would prefer to take the matter up after the jury was impaneled, but before testimony. Defense counsel asked that the district court deal with "late witness disclosure issues" at that time also. On inquiry, the State's counsel informed the court that "we could not locate the nurse" so the State had available someone else to testify that the missing witness was a registered nurse at the time she drew Defendant's blood. The court stated that "we'll deal with all of that in the interval after we pick the jury." Neither trial counsel pressed the district court to take the matter up sooner.

{27} After the jury was sworn, the district court addressed the late witness disclosure issue. The State filed an amended witness list the day before trial dropping the nurse who drew Defendant's blood. Defense counsel complained about the late change because the nurse had been identified as a witness since mid-November. Defendant's counsel also asserted that Officer Tutor had admitted to counsel that he could not recall anything about the blood draw.

{28} After some discussion, the district court decided to receive a proffer of evidence concerning the blood draw. The State called only Officer Tutor who identified his signature on a standardized form that he signed as a witness to the blood draw. The officer

admitted he had no independent recollection of the draw and he did not know whether the nurse followed proper procedures or not.

{29} After argument by counsel, the district court ruled that the State had not provided sufficient foundation for the blood alcohol report because no one could say whether the State Laboratory protocol for blood draws was followed. The district court ruled it would not allow the blood test as evidence.

{30} Expressing surprise at the district court's ruling, the State asked for a recess to reevaluate the case. Following the recess, the State orally moved for an immediate appeal of the ruling under Section 39–3–3(B)(2), asserting that the passage of time and circumstances had overtaken it. The State asserted that a case involving a similar issue was currently pending before our Supreme Court. The State specifically asked the district court not to declare a mistrial. The prosecutor also stated "If I had known this was coming up before the jury was empaneled, we could have handled it differently."

{31} In response, the district court expressed some dissatisfaction with the State's lack of diligence in preparing the case for trial—which it repeated later in the colloquy with State's counsel. The district court also focused on the fact that the request for an appeal was being made midtrial. The district court was skeptical whether a mistrial appeal as of right was possible under any statutory provision. The district court also stated that it was "not inclined to stop this trial for an appeal" asserting that it perceived the primary issue in the case to be "control of the vehicle, it's not intoxication." The judge also observed that he did not view his ruling as a suppression, but rather as a foundation issue.

{32} The State continued to assert it could appeal as a matter of right. Apparently, viewing any appeal the State might have as interlocutory, the district court stated that it would not certify the matter for appeal. The district court expressed its view that the State could not appeal after the jury had been empaneled.

{33} The conversation continued thereafter with the State explaining how the ruling weakened its case and the district court expressing its frustration with the fact that the State had only "yesterday" discovered that the nurse was unavailable having assured the district court repeatedly over the course of six hearings that it was ready to proceed with trial. After making clear to the State that in its opinion the State could not appeal, the district court called a second recess.

{34} Upon reconvening, the State's counsel again asserted that the State had a "right as a matter of course to appeal the case." The State filed a notice in open court. The district court twice expressed its amazement at this turn and reiterated its view that "there is no appeal." The district court asked if the State was ready to proceed and the State stated only that it was ready to proceed on appeal. After another extended colloquy about the situation, defense counsel asked the district court either to instruct the State to call a witness or to dismiss the case because the State "isn't going forward with the prosecution."

{35} The district court confirmed with the State that it would not be calling any witnesses. Receiving confirmation, the judge directed a verdict of acquittal and dismissed the State's case. The judge informed the jury of the situation and that he had directed a verdict of acquittal.

{36} The district court entered an order Directing Verdict and Judgment of Acquittal which succinctly summarized the events described above. The decretal language of the Order makes clear the district court's intent to render a decision on the merits:

> IT IS THEREFORE ORDERED that, after a jury having been impaneled and the [S]tate not presenting any evidence to support a charge of Driving While Intoxicated, the court directs a verdict of not guilty be entered in this matter.

## DISCUSSION

{37} Section 39–3–3(B)(2) provides:

B. By the state. In any criminal proceeding in district court an appeal may be taken by the state to the supreme court or

court of appeals, as appellate jurisdiction may be vested by law in these courts:

(2) within ten days from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property, if the district attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

The State argues that this provision gives it an absolute and automatic right to immediately appeal rulings suppressing or excluding evidence even when the ruling is issued midtrial; that is, after jeopardy has attached. To our knowledge, this argument has never been made before to a New Mexico appellate court, and we reject it.

{38} Though not entirely clear, the State seems to posit a "plain meaning of the statute" argument. The State's Brief in Chief simply quotes the statute and asserts a "clear legislative intent" to grant the State a right to appeal in situations such as we have here. The State does not discuss in any detail the practical or theoretical difficulties posed by its position. It does acknowledge, though quite obliquely, the interlocutory nature of the appeal it seeks to prosecute by citing *State v. Ahasteen*, 1998–NMCA–158, ¶ 10, 126 N.M. 238, 968 P.2d 328, for the notion that we should give the concept of finality a practical construction.

{39} Our primary task in interpreting a statute is discerning legislative intent. *State v. Martinez*, 2006–NMCA–068, ¶ 5, 139 N.M. 741, 137 P.3d 1195. We start by examining the plain language of a statute. If the language is clear we enforce it unless it is contrary to constitutional principles or would lead to absurd results. *State v. Gutierrez*, 115 N.M. 551, 552, 854 P.2d 878, 879 (Ct.App. 1993). The language of Section 39–3–3(B)(2) is deceptively simple and direct. It grants a ten-day time frame within which the State may appeal "a decision or order of a district court suppressing or excluding evidence." It does not explicitly address or make any distinction between pretrial versus midtrial rulings.

{40} We have observed that appeal of a suppression order is fundamentally an interlocutory appeal. *State v. Alvarez*, 113 N.M. 82, 84, 823 P.2d 324, 326 (Ct.App.1991) (holding that the ten-day time to appeal Section 39–3–3(B) controls the timing of appeals of suppression orders). We stated that the "mandatory nature of suppression order appeals is rooted in Section 39–3–3(B), not the constitution." *Id.* In practice we have routinely accepted appeals from pretrial suppression and exclusionary orders entered by our district courts, though we have been careful to limit such appeals to the letter of the statute. *See State v. Griego*, 2004–NMCA–107, ¶ 6, 136 N.M. 272, 96 P.3d 1192 (noting that denial of a motion in limine seeking to restrict impeachment of the victim did not meet the requirements of Section 39–3–3(B)(2) and was not appealable under it).

{41} To our knowledge we have never accepted, or been asked to accept as an automatic interlocutory matter, an appeal from a suppression or exclusionary ruling issued after the start of trial unless the trial was brought to an orderly conclusion releasing the jury or the district judge exercised his discretion to allow an appeal. For example, in *State v. Joe*, 2003–NMCA–071, ¶ 15, 133 N.M. 741, 69 P.3d 251, we considered an appeal of a midtrial suppression order that resulted in a directed verdict on one of the pending charges. There were other charges unaffected by the suppression ruling, but the district court granted a mistrial as to them, to which no one objected. Here, the State specifically requested the district court not to enter a mistrial. In *Romero*, 2000–NMCA–029, ¶ 6, 128 N.M. 806, 999 P.2d 1038, we considered an appeal of an exclusionary evidentiary ruling apparently midtrial. There was no question raised about appealability there because the State moved to appeal under Section 39–3–3(B)(2), and the district court granted the motion. Here, of course, the district court explicitly refused to certify or grant an interlocutory appeal. We note that the State has never argued that the district court abused its discretion by its refusal.

{42} We think it is clear why the issue has not been presented before: it is simply unworkable and absurd to allow automatic appeals from midtrial rulings given the

havoc such a procedure could wreak with trials. In any trial, district court judges have to make numerous evidentiary rulings. It is the better part of a district judge's job. Some rulings will be more difficult and serious than others, but many will meet the criteria of Section 39-3-3(B)(2). It would be an intolerable burden on jurors, witnesses, defendants, the district courts, and even the State, to allow automatic suspension of ongoing trials for months or years. Contrary to the beguiling simplicity and clarity of Section 39-3-3(B)(2), we do not believe the legislature intended to give the State the power to disrupt ongoing trials at its discretion, The timing of the ruling—whether it comes pretrial or after jeopardy has attached—is critical to the meaning of the statute. We hold that Section 39-3-3(B)(2) does not provide an automatic appeal from suppression or exclusionary orders entered after jeopardy has attached in a trial.

{43} Because the State did not have the right to appeal, we dismiss this appeal. Given our resolution of the case we do not need to, and in fact cannot, deal with the merits of the district court's evidentiary ruling. To avoid continued litigation on remand, we hold that the district court's dismissal constitutes an acquittal and prevents the State from reprosecuting Defendant for this incident. The State's refusal to present any evidence resulted, as the district court noted, in a failure of proof and the district court's order was an adjudication of innocence based on that failure of proof. The State's actions caused the dismissal and double jeopardy principles preclude retrial. *See Joe,* 2003–NMCA–071, ¶ 16, 133 N.M. 741, 69 P.3d 251, citing *Tapia,* 109 N.M. at 739–40, 790 P.2d at 1020–21.

FRY, Judge (specially concurring).

{44} I concur in the result of Judge Robinson's opinion, but I do not agree with the rationale supporting the result. I concur fully in Chief Judge Bustamante's concurring opinion.