30 P.3d 649

**STATE of Arizona ex rel. David A. PENNARTZ, Scottsdale City Attorney, Petitioner,**

v.

**The Honorable Joseph OLCAVAGE, Judge of the Scottsdale City Court, Respondent Judge,**

**Gerald J. Adair, Stacy M. Aeed, Ryan Bettes, Scott T. Castle, India E. Franks, Danielle Larkin, Carolyn S. Porter, Randall C. Urbom, Real Party in Interest.**

**No. 1 CA–SA 01–0130.**

Court of Appeals of Arizona, Division 1, Department B.

Aug. 30, 2001.

David A. Pennartz, Scottsdale City Attorney, By Carrie Cole and Roric Massey, Assistant City Prosecutors, Attorneys for Petitioner.

Law Office of David M. Cantor, By Michael A. Burkhart, Tempe, Attorneys for Real Parties in Interest Adair and Bettes.

Law Office of Greg Clark, By Greg Clark, Phoenix, Attorneys for Real Parties in Interest Castle, Franks, and Urbom.

## OPINION

RYAN, Judge.

¶ 1 In this special action, we are asked to decide whether persons who have received specific training in phlebotomy,[1] who are certified in phlebotomy by two national certification agencies, and who have performed numerous blood draws are legally "qualified" to perform blood draws for purposes of determining the alcohol concentration or drug content in a suspect's blood under Arizona Revised Statutes ("A.R.S.") section 28–1388(A) (Supp.2000). A Scottsdale City Court judge ruled that phlebotomists were not qualified persons under the statute unless they drew blood under the supervision of a licensed medical professional.

¶ 2 We accept jurisdiction and hold that, under the circumstances of these cases, the phlebotomists here are "qualified person[s]" within the meaning of section 28–1388(A) and may perform blood draws for forensic purposes under section 28–1388(A) without the supervision of a licensed medical professional. Thus, we grant relief on the State's petition.

## BACKGROUND

¶ 3 Respondents were all arrested and charged with Driving Under the Influence in violation of A.R.S. § 28–1381(A)(1),(2) (1998). In each case, one of two phlebotomists under contract with the City of Scottsdale drew the suspect's blood at a jail, police station, or command post. Each blood sample yielded test results of a blood alcohol concentration

that exceeded the legal limit. *See* A.R.S. § 28–1381(A)(2).

¶ 4 In Scottsdale City Court, Respondents each moved to suppress the blood test results, arguing that phlebotomists are not "qualified persons" who may legally draw blood under section 28–1388(A). The motions were consolidated for hearing. For purposes of the consolidated motions, the parties stipulated that, in each case, the phlebotomist drew blood in a manner acceptable in the field of phlebotomy. The parties further stipulated that the phlebotomists had completed specific training in phlebotomy, were certified in phlebotomy by the American Society of Phlebotomy Technicians and by American Medical Technologists, and had performed thousands of blood draws in their careers as phlebotomists. The parties also stipulated that the phlebotomists would testify that they had been trained in emergency procedures relevant to drawing blood; that they are not medical assistants, nor do they use that title; that in the medical field, a phlebotomist and a medical assistant are not the same occupation; and that, in Arizona, there is no state licensing of phlebotomists.

¶ 5 At the hearing on the motion to suppress, the State elicited testimony from Anthony Robert Ballew, a registered nurse and nurse practitioner. Ballew testified that medical assistants may or may not be trained in phlebotomy. He also testified that while phlebotomists have to be certified in hospitals and clinical settings, they do not have to be certified for forensic alcohol analysis in criminal settings. Ballew opined that phlebotomy is not surgery, that a blood draw for determining blood alcohol content is not a diagnostic test, and that the statutes regarding the necessity of supervision in drawing blood do not apply in criminal forensic settings.

¶ 6 In a subsequent written disposition, the city court granted the consolidated motion to suppress. Relying on statutory provisions requiring direct supervision of medical assistants who take body fluids, *see* A.R.S. §§ 32–

---

1. "Phlebotomy" is defined as an "[i]ncision into a vein for the purpose of drawing blood." PDR Medical Dictionary 1350 (1995).

1456(A), 32–1401(16) and (8) (Supp.2000),[2] the court concluded that "when the Legislature talks about a 'qualified person' they [sic] are referring to an individual who is directly supervised by a doctor, physician's assistant or registered nurse." Because the phlebotomists in these cases were not directly supervised by a doctor, physician's assistant, or registered nurse when they drew the Respondents' blood, the court held that they were not persons "qualified" under section 28–1388(A) to draw blood.

¶ 7 The State filed a motion to dismiss without prejudice in order to appeal the court's ruling on the motion to suppress under A.R.S. § 13–4032(6) (Supp.2000). The State then appealed the ruling to the superior court and simultaneously filed a special action petition in this court under Rule 7(b) of the Arizona Rules of Procedure for Special Actions. In an appendix to its petition, the State included a number of decisions from various municipal and superior courts, and one memorandum decision from this court, that have reached inconsistent conclusions on this issue.

## JURISDICTION

¶ 8 Special action jurisdiction is appropriate when there is no equally plain, speedy, and adequate remedy by way of appeal. Ariz. R.P. Spec. Act. 1(a). The decision to accept jurisdiction is largely discretionary with the court. *See State v. Superior Court (Martinez)*, 186 Ariz. 218, 219–20, 920 P.2d 784, 785–86 (App.1996) (citation omitted). Special action jurisdiction is more likely to be accepted in cases involving a matter of first impression, statewide significance, or pure questions of law. *See State v. Superior Court (Thompson)*, 198 Ariz. 109, 110, ¶ 2, 7 P.3d 118, 119 (App.2000);*State v. Superior Court ex rel. County of Navajo*, 190 Ariz. 203, 205, 945 P.2d 1334, 1336 (App.1997) (citation omitted); *Baker v. Superior Court*, 190 Ariz. 336, 338, 947 P.2d 910, 912 (App. 1997) (citation omitted). In addition, accepting special action jurisdiction is appropriate when the issue is one "upon which lower

courts, lacking appellate guidance, have rendered inconsistent judgments." *State v. Superior Court (Porter)*, 198 Ariz. 376, 378, ¶ 5, 10 P.3d 634, 636, 638 (App.2000) (review granted Feb. 13, 2001).

¶ 9 We normally would await a final decision in the superior court appeal before accepting special action jurisdiction in cases such as this. *See, e.g., State v. Superior Court (Williams)*, 168 Ariz. 128, 130–31, 811 P.2d 791, 793–94 (App.1991) (accepting special action jurisdiction following a superior court appeal from municipal court). But the unique circumstances of this special action merit a rare exception to our general practice. These unique circumstances include the following: (1) there is a possibility that the appeals to the superior court in these cases will not be consolidated and will thus result in conflicting rulings in the superior court; (2) numerous cases not directly involved in the superior court appeal nor in this special action are pending in various city and state courts; and (3) providing immediate appellate court guidance on this pure issue of law serves the substantial interest in achieving judicial economy. *See Martin v. Reinstein*, 195 Ariz. 293, 301, ¶ 11, 987 P.2d 779, 787 (App.1999) (noting that the risk of inconsistent decisions and the promotion of judicial economy are appropriate considerations in determining whether special action jurisdiction should be accepted); *Ariz. Dep't of Pub. Safety v. Superior Court*, 190 Ariz. 490, 494, 949 P.2d 983, 987 (App.1997) (same) (citations omitted).

¶ 10 We therefore accept jurisdiction because blood testing performed for DUI purposes is an issue of statewide importance. In addition, the issue involves a pure question of law and the lack of appellate guidance on this issue has led to inconsistent rulings in the lower courts. Finally, accepting special action jurisdiction is appropriate because, in the event that the State loses its superior court appeal, the State would be precluded from pursuing any further direct appeal from that final judgment. *See* A.R.S. § 22–375 (1990); *State v. Superior Court (Pawlowicz)*,

---

2. The city court incorrectly cited to A.R.S. § 32–1501(A), but quoted A.R.S. § 32–1401(8) in its disposition.

195 Ariz. 555, 557, ¶ 7, 991 P.2d 258, 260 (App.1999) (concluding that special action jurisdiction was appropriate to allow State to challenge superior court order suppressing evidence in DUI prosecutions originating in magistrate and justice courts). Accordingly, we conclude that these circumstances are sufficient under Rule 7(b) of the Arizona Rules of Procedure for Special Actions to justify our acceptance of jurisdiction in this case.

## DISCUSSION

### I. Inapplicability of Titles 36 and 32

¶ 11 Section 28–1388(A), which defines the class of persons who are legally authorized to perform blood tests for DUI purposes, states the following:

> If blood is drawn under § 28–1321, only a physician, a registered nurse **or another qualified person** may withdraw blood for the purpose of determining the alcohol concentration or drug content in the blood. The qualifications of the individual withdrawing the blood and the method used to withdraw the blood are not foundational prerequisites for the admissibility of a blood alcohol content determination made pursuant to this subsection.

(Emphasis added.)

¶ 12 "Qualified person" is not defined in Title 28. Nevertheless, Respondents argue that certain statutory provisions from Titles 36 and 32 govern the scope of "qualified persons" under Title 28. Title 36 states that "[o]nly a person authorized by law shall collect human bodily materials. Technical personnel of a laboratory may collect blood ... under the direction or upon the written request of a licensed physician for examination by a licensed laboratory." A.R.S. § 36–471 (1993). Similarly, under Title 32, medical assistants may "[t]ake body fluid specimens" as part of a "medical procedure" only "under the direct supervision of a doctor of medicine, physician assistant or nurse practitioner." A.R.S. § 32–1456(A) (Supp.2000). A "medical assistant" is defined as

> an unlicensed person who meets the requirements of § 32–1456, has completed an education program approved by the board,

assists in a medical practice under the supervision of a doctor of medicine, physician assistant or nurse practitioner and performs delegated procedures commensurate with the assistant's education and training but does not diagnose, interpret, design or modify established treatment programs or perform any functions which would violate any statute applicable to the practice of medicine.

A.R.S. § 32–1401(16) (Supp.2000).

¶ 13 Respondents argue that "qualified person" under section 28–1388(A) should be construed in conjunction with the limitations set forth in Titles 36 and 32. Specifically, they argue that one who is not a physician or registered nurse cannot be a "qualified person" unless, under A.R.S. § 32–1456, that person is under the direct supervision of a doctor of medicine, physician assistant, or nurse practitioner. We reject this approach and conclude that the relied-on provisions of Titles 36 and 32 do not limit the scope of "qualified person" under section 28–1388(A).

### A. Title 36

¶ 14 Arizona Revised Statutes § 36–471 falls under Chapter 4.1 of Title 36, which governs the regulation of clinical laboratories. However, "clinical laboratories" are defined so as to explicitly exclude "law enforcement crime laboratories." A.R.S. § 36–451(4) (1993) ("Clinical laboratory does not include law enforcement crime laboratories."). This suggests that the limitations of A.R.S. § 36–471 were not intended to restrict the scope of blood tests performed for criminal DUI purposes under Title 28. Moreover, even if A.R.S. § 36–471 were applicable to Title 28, section 36–471 states that persons authorized by law may collect body fluid samples. Because section 28–1388(A) authorizes "qualified persons" to draw blood samples for DUI purposes, this merely begs the question whether phlebotomists are qualified persons. We therefore conclude that A.R.S. § 36–471 is inapplicable to section 28–1388(A).

### B. Title 32

¶ 15 The limitations regarding medical assistants under Title 32 are similarly inappli-

cable to section 28–1388(A). Medical assistants are, by definition, individuals who assist in the practice of medicine. A.R.S. § 32–1401(16) (" 'Medical assistant' means an unlicensed person who ... assists in a medical practice."). Likewise, A.R.S. § 32–1456(A)'s prohibition against medical assistants' taking body fluid specimens without supervision applies only when the specimens are collected as part of a "medical procedure." But phlebotomists who draw blood for DUI purposes are not assisting in a medical practice, nor are they collecting specimens as part of a medical procedure. Their actions are forensic in nature, not diagnostic or medical.

¶ 16 Our conclusion is supported by Title 32's definition of "practice of medicine." *See* A.R.S. § 32–1401(21). In relevant part, the " [p]ractice of medicine' means the diagnosis, the treatment or the correction of ... any and all human diseases, injuries, ailments, infirmities, deformities, physical or mental, real or imaginary, by any means, methods, devices or instrumentalities." *Id.* Here, the phlebotomists were clearly not treating Respondents nor correcting any disease, injury, ailment, etc. Nor were they diagnosing. "Diagnosis" is not defined in Title 32, but we have previously concluded that "[t]he word 'diagnosis' has an established legal meaning. It is the act or art of recognizing the presence of disease from its symptoms." *State v. Horn,* 4 Ariz.App. 541, 546, 422 P.2d 172, 177 (1966) (citations omitted). When blood is drawn for DUI purposes, no attempt is made to identify the presence of a disease.[3] Blood drawn for DUI purposes is not aimed at enabling medical personnel to make a medical determination. Rather the blood draw is intended to provide the evidence necessary to make a legal determination—namely, whether a suspect's blood alcohol content exceeds a legislatively imposed limit.

¶ 17 The practice of medicine also includes surgery. A.R.S. § 32–1401(21). The term "surgery" is not defined by statute. We are thus required to construe the term according to its common and approved usage. *See* A.R.S. § 1–213 (1995). In common usage,

the taking of a blood sample does not constitute surgery. *Cf. Schmerber v. California,* 384 U.S. 757, 771, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (noting that blood draws are commonplace and generally "involve[] virtually no risk, trauma, or pain").

¶ 18 Because DUI blood draws do not involve diagnosis, treatment, or correction, nor do they involve surgery, they do not constitute the practice of medicine. Because DUI blood draws do not involve the practice of medicine, persons who draw blood for DUI purposes are not, by definition, acting as medical assistants. Because persons who draw blood for DUI purposes are not acting as medical assistants, the regulations prohibiting medical assistants from drawing blood in the absence of a doctor, physician's assistant, or nurse practitioner, do not apply to persons drawing blood for DUI purposes under section 28–1388(A).

**C. Duty to Harmonize Statutory Provisions**

¶ 19 Respondents argue that we have a duty to construe apparently conflicting statutes in a way that harmonizes them and gives rational meaning to both. *State v. Tarango,* 185 Ariz. 208, 210, 914 P.2d 1300, 1302 (1996) (applying this doctrine to harmonize two apparently conflicting sentencing enhancement provisions of Title 13) (citations omitted). But this doctrine applies only when the statutes "have the same purpose or object." 2B NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 51.03 (5th ed.1992). As discussed above, A.R.S. §§ 32–1456 and 36–471 have different purposes than section 28–1388(A). Consequently, there is no justification for interpreting these statutes in light of each other. *See id.*

**II. Definition of "Qualified"**

¶ 20 Having determined that Title 28 does not define the term "qualified person," and having rejected Respondents' argument that "qualified person" must be defined by reference to Titles 32 and 36, we employ the principles of statutory interpretation to

---

**3.** Although alcoholism is sometimes called a "disease," the phlebotomists did not attempt to "diagnose" Respondents as alcoholics. Rather,

DUI blood draws are analyzed to detect the amount of alcohol in the bloodstream.

define the term. "Unless the legislature clearly expresses an intent to give a statutory term a special meaning, we give the words used in statutes their plain and ordinary meaning." *State v. Mahaney*, 193 Ariz. 566, 568, ¶ 12, 975 P.2d 156, 158 (App.1999) (citation omitted). In determining the plain and ordinary meaning of a word, we may refer to an established and widely used dictionary. *Id.* (citation omitted). One such dictionary defines "qualified" as "fitted (as by training or experience) for a given purpose: COMPETENT." *Merriam–Webster's Collegiate Dictionary* 955 (10th ed.1999). Thus, a person is "qualified" to draw blood for DUI purposes if he or she is competent, by reason of training or experience, in that procedure.

¶ 21 Here, the evidence unquestionably establishes that the phlebotomists were, by reason of training and experience, competent to draw blood. Each has completed formal education on the subject; each has been certified by nationally recognized agencies in the field; and each has performed thousands of blood draws. Moreover, a phlebotomist, by definition, is a person who, through training or experience, is competent to draw blood.[4] *See PDR Medical Dictionary* 1350 (defining "phlebotomist" as "[a]n individual trained and skilled in phlebotomy"). We therefore conclude that the phlebotomists here were "qualified" to draw blood for DUI purposes under section 28–1388(A).[5]

### III. Constitutionality of Section 28–1388(A)

¶ 22 The State, apparently anticipating an attack on the constitutionality of section 28–1388(A), included in its petition a lengthy defense of the statute's constitutionality. However, Respondents chose not to provide any substantive argument against the constitutionality of section 28–1388(A).[6] We there-

fore need not address this issue. *See State v. Trostle*, 191 Ariz. 4, 12, 951 P.2d 869, 877 (1997) (precluding issues presented on appeal without argument) (citation omitted); *State v. Rossi*, 171 Ariz. 276, 281, 830 P.2d 797, 802 (1992) ("Failure to argue a claim in a brief constitutes abandonment and waiver of the claim.") (citation omitted). We note, however, that Division Two of this court considered and rejected these constitutional challenges in *State v. Nihiser*, 191 Ariz. 199, 953 P.2d 1252 (App.1997).

### CONCLUSION

¶ 23 We accept jurisdiction and grant the relief requested in the State's petition.

CONCURRING: JOHN C. GEMMILL, Judge, WILLIAM F. GARBARINO, Judge.

---

4. We emphasize, however, that it is the training and experience that makes a person "qualified"—not the title itself. But we need not decide here the minimum threshold at which a professed phlebotomist becomes qualified because, wherever that threshold lies, the training and experience of the phlebotomists here clearly exceed that threshold.

5. Because we conclude that the phlebotomists in this case are qualified persons within the mean-

ing of section 28–1388(A), we do not address the State's contention that evidence derived from blood drawn by an unqualified person may still be admissible under the general principles of the Rules of Evidence.

6. Although one brief lists the constitutional challenge on its statement of issues, the brief fails to address this issue in any substantive manner.